May it please the Court. My name is Michael Karimi. I am attorney for appellants in this hotel franchising dispute in which there are two principal issues. The first centers on Washington's Franchise Investment Protection Act, and the second on the party's franchise agreement, and specifically the notice of default and opportunity to cure requirements under that agreement. I am more than happy to begin by addressing any questions the Court may have. Otherwise, I would jump to the first issue. Go ahead, please. And so, of course, the thought occurs to me is what do I believe the Court needs to find error in this case? That is to say, what do I want the Court to be looking at at the moment it makes its decision? And since we know that the District Court applied a Washington law, and since we know that MAK sought recourse to Washington's Franchise Investment Protection Act, the Bill of Rights provisions, my answer consists of, one, I would like the Court to be looking at the Bill of Rights, Section 19-100-180, and, two, this Court's decision in GrabQuick. I think those two things put together would be sufficient to find that the District Court committed error in this case. Now, the District Court simply said that the Washington Franchise Law doesn't apply, and the District Court then didn't say if it applied, then X. It just said it didn't apply, correct? That is to say, the District Court has not yet had an opportunity to apply the so-called Bill of Rights out of the Franchise Act. Am I right? I don't believe that's correct, Your Honor. I believe, well, the District Court did say that this law doesn't apply. Right. The reason being the Court ---- No, no. It doesn't matter what the reason is. He said that the law didn't apply. He did not go on to say, if it did apply, here's what the answer would be to the case. That's Judge Fletcher's question. No. The Court did not say what the outcome would be if the law did apply. What I'm driving at is, if I were to agree with you that the so-called Bill of Rights of the Washington Franchise Act applies, I would be inclined to send it back to the District Court for his view as to what that statute means would apply to the facts of this case. I think that's a reasonable process to go through. The question has not been decided how the Bill of Rights would affect the outcome of this case. And so where I was was addressing whether the Bill of Rights would apply to M.A.K. in this case. And so while I'm sure it takes a great deal of patience to be on an appellate court and hear and to be told what's clear and what's not clear, I think the rule in GrabQuick pretty clearly states that a legislature may affirmatively restrict the use of its state's laws by inserting an express requirement that the law should be applied on a purely intrastate basis. And so my initial question would be, where are the geographic limitations in this case? Where are the geographic limitations in FIPA or in the Bill of Rights in particular? And the District Court and Red Lion, they both point to Section 19-100.020, which deals with registration requirements under FIPA. And again, I think to do that immediately disregards GrabQuick because Section .020, which deals with those registration requirements, has no language which would allow the literal application of the language in the state to Section .180, the Bill of Rights. But if we were to disregard GrabQuick for a moment and do what I think no appellate court has concluded and say that we can look to legislative intent as a sufficient condition upon which to find a geographic limitation, I don't think we would find one. Indeed, Section .020, the registration requirements, itself specifically provides a means by which to burden a Washington franchisor when the only direct beneficiary is a non-Washington franchisee that was never within the geographic boundaries of Washington. And so it's hard for me to follow the reasoning and say that the legislature somehow intended when defining the words in the states to apply geographic limitations and say this is only to be applied on an interstate basis to apply that to the Bill of Rights provisions. And, of course, the narrative supplied by Red Lion and adopted by the district court makes resort to Professor Chisholm's article, which was passed shortly after FIPA was originally enacted. Red Lion points out that Professor Chisholm criticized the drafting of the Washington legislature and not defining the words in the states. But what I think if we look at the actual criticisms of Professor Chisholm, he was not criticizing the failure to exclude certain parties. Professor Chisholm was criticizing the Washington legislature's failure to prevent a franchisor from leveraging the words in the states to prevent application of FIPA. So in other words, Professor Chisholm was saying to the legislature, you've used this word in the states, you have not defined it in such a way that we know for sure when it works and when it doesn't. We need to make sure that the franchisors don't step in and say, in a case where we think that the law should apply, well, it shouldn't because of the words in the state. So, counsel, you acknowledge that there are some territorial limitations in the Franchise Act? No, because... You can't say no when Judge Robinson says there are some limitations in the act. There are limitations to some provisions, is your position. Not that there are no limitations. I believe there are no limitations because there is geographic language in the statute, but geographic limitations are limitations that seek to apply the law on a purely intrastate basis. So at the moment that Section .020 applies to a non-Washington franchisor... But it says in this state. You don't consider that to be a territorial limitation? No, I do not. It's certainly geographic language, but I don't believe there's... That's semantics. Why would you have that language in there if it weren't intended to limit application to that particular state? I think GrabQuick answers that question, and what GrabQuick says is that a legislature is naturally concerned with protecting its citizens. But I don't believe, and now these are my words, I don't believe that's equivalent of saying that the legislature wanted to restrict a non-Washington franchisee from using the law simply because of... But that wasn't the question I asked you. I'm not talking about legislative intent. I'm talking about the content of the legislation, the four corners of the legislative document. Are there territorial limitations included in there? Again, my answer is that there is geographic language, but I don't believe those are meant to be... You don't think, for instance, when it says, it is unlawful for any franchisor or sub-franchisor to sell or offer to sell any franchise in this state, that that's not a limitation. It means you can't do it anywhere else in the country. Your Honor, I'm just simply applying the GrabQuick standard. Okay, all right. Well, whatever you're applying, that's your answer. You don't think... How do you distinguish Judge Kuhnauer's decision in the Taylor case? That seemed to be important to Judge Shea. It was, and I think there were two reasons it was important. One reason was the analysis provided by the court in the Gottjung case where they looked at Professor Chisholm's article and said, what was the response from the legislature to that criticism? That was one reason, and I think the... Well, that is the reason, actually. I said there's two reasons. I think that's the reason, is the resort to Professor Chisholm. The way to distinguish that, I believe, is Professor Chisholm, as I was trying to say, was concerned with preventing franchisors from leveraging the words in this state, from leveraging the words to their advantage. He was concerned with, for example, if a franchisor comes to a Washington franchisee and said, let's go to Oregon, let's sign this franchise agreement, the franchisor may then argue that the Washington law doesn't apply just because of that, because of the lack of definition. And so the legislative response was indeed to provide a definition of in this state to make it clear that that kind of activity would not make FIPPA an applicable. What provision of FIPPA was at issue in the Taylor case, the Gottjung case? The Gottjung case was concerned with the FIPPA waiver, section 19100.220. He was concerned with the fraud provision, 170. That was the ultimate issue. The ultimate issue was the franchisor was trying to avoid a settlement agreement by resort to... And the fraud provision, 170, is the other provision of FIPPA that contains the geographical limitation. So Judge Kuhnauer in the Taylor Gottjung case was dealing with one of the two provisions in the statute that has what I would characterize as a geographical limitation, has the words in this state. And I understand that, and I agree with almost all of that, of course. Now, was either the franchisee or the franchisor in the Taylor case a resident of Washington? No. The franchisee was an Oregon franchisee. The franchisor was a Delaware Incorporated franchisor based in Canada. Right. And so, and I would like to point out I've done my best to use the word geographic limitation. That's the language of GrabQuick. When we start speaking of extraterritoriality, that applies in the dormant commerce clause. In the case of dormant commerce clause, and I think to mix the concepts would not be beneficial. But it is true that the Gottjung case involved no parties that were in any way involved. Can you tell me when the Washington legislature amended the statute in response to Professor Chisholm or whoever else it was, what was the amendment? The amendment was, there were some amendments that I don't think were responsive to Professor Chisholm. The amendment responsive to Professor Chisholm in this context was to define the words in this state. And where is that? What section is that definition? That's 19-100.020. And the definitions of in this state come in subsections two and three, which are parallel with one another in many ways. 19-100.what? 020, unlawful in certain instances to sell or offer to sell. And that tells you that when an offer to sell a franchise is made in the state? For purposes of this section. Yeah. And it's subsection B in each, in subsection two and three, B, that the statute is explicitly applied to. Before the amendment, did 19-100.020 have a provision that said it was unlawful to sell a franchise in the state? I believe the way it was structured before was that first, subsection one, where it did say, yes, that it's unlawful to sell in this state. But the words in this state was not defined in any way. And that was Professor Chisholm's criticism. He said, why don't we have a definition? And then after the amendment, when it said it was illegal to make an offer to do or unlawful to do it, then they defined what they meant by that and it applied to that provision? Yes. Well, the specific language, literal language for purposes of this section, this is the definition of in this state. So is it your position that the franchise in this case met the definition of in this state? Well, by literal terms, I don't believe it does. Because literally, in order to meet this definition, you have to be concerned with an offer, which is precisely why it's difficult to apply this section to the Bill of Rights, which has nothing to do with offers. It has to do with conduct after a franchise agreement has been reached. But this is the definition that the legislature has embodied for determining whether or not something occurs in the state of Washington. So you acknowledge that the franchise in this case would not meet the definition of in this state? Not the literal definition, but if we were to substitute the words about offer, because we're talking about offer and the registration in this section, if we were to substitute that concept for violating the franchise laws of another state more generally, I think MAK would satisfy the definition. And, again, I'm speaking of if we look at .020, Subsection 2 or 3, in both cases, the law applies if an offer originates from the state and violates the opportunity or franchise laws of the state in which it's directed. How can we rewrite the definition that the Washington legislature has enacted? Excuse me. I'm not asking you to rewrite them. I'm asking you to literally apply them. And when you literally apply the definitions, they don't apply to the Bill of Rights section. All right. Thank you, counsel. Thank you. May it please the Court. My name is Doug Berry, representing the Appley Red Lion. I want to first just kind of step out and answer a question that Judge Fletcher asked with respect to Taylor. I was fortunate enough to be the counsel on Taylor, and MAK's counsel or previous counsel was actually the counsel on that case as well. The underlying case did involve a claim for misrepresentation under the anti-fraud provisions of the Washington Franchise Investment Protection Act, but the specific question involved in Taylor was the applicability of the anti-waiver provisions of FICA, and specifically the Bill of Rights provision 180-2G and 1980, excuse me, 19-100-220. The principal argument in Taylor was that the settlement agreement, underlying settlement agreement, which 1-800-GOT-JUNK argued foreclosed any claim for misrepresentation, was invalid by virtue of the anti-waiver provisions of the act. Secondly, when we get to the question of which law applies, there really are three separate levels to this question. One level, which the district court assumed, which was that Washington law would in the first instance apply by virtue of Washington's choice of law rules. In 1-800-GOT-JUNK versus Taylor, the parties had specifically agreed to the application of Washington's substantive law under a choice of law provision of their franchise agreement. In this particular case, there is a choice of law provision in the party's franchise agreement, but that choice of law provision, which calls for the application of Washington law with respect to the interpretation of the contract, specifically disavows the application of Washington Franchise Investment Protection Act unless that act or that statute would apply, otherwise apply. So we just look at the statutes with that? Well, or you look in the first instance, as you would in the first instance, is to a choice of law rule. I mean, in Washington's choice of law rules would generally point to the state law that applies, substantive law applies to the state with the most significant relationship to the particular issue. And in most of these cases, since the action took place, the harm was all incurred in California, generally under Washington's choice of law rules, Washington's choice of law rules would point to the application of California law. But it's hard for me. Let's assume. Let me look at this case the way it presents. We have a Washington franchisor, correct? That's correct. And we have a Washington statute, the so-called Bill of Rights of the statute. That's correct. That itself contains no geographic limitation. We have two provisions in the statute that contain an explicit limitation. One of them is the registration, and the other one is the fraud provision. Well, Bill of Rights contains no in-the-state limitation, correct? That's correct, Your Honor. And so it seems to me perfectly plausible to read this statute with a Washington franchisor providing protections of the franchisee as against the franchisor when that provision in the so-called Bill of Rights, the protective provision, contains no geographic limitation to apply against a Washington franchisor. And why is that such an implausible construction of the statute? Well, because in the first instance, the entire structure of the statute, you're right, although 180 does not specifically refer to territorial limitations, as there are various other provisions in the statute that do not contain territorial limitations. Correct. But it begs the issue, does that mean that there are no territorial restrictions? Well, on the one hand, I would aside the case in front of me, which is the Bill of Rights, which is to say it provides rights against the franchisor. We have a Washington state franchisor, and we have no geographical limitation in the provision of that issue. But I would suggest, Your Honor, that the entire structure of the statute could best be read as saying, by statement by the legislature, we intend to regulate franchises. What types of franchises do we intend to regulate? Those that are in the state. It would have been very easy for the legislature to do what it did. Instead of just putting it into two provisions that limit it in the state, they could have put it into the whole statute. The statute only applies in the state. I think you were starting on the idea that Washington law doesn't apply for other reasons. But if you get that, you said you had three reasons. I assume one of them, maybe your weakest, is that this statute doesn't apply in this state, not only for sales and purchases, but for everything. That's one of your three arguments? Yes, Your Honor. But, again, the structure of the statute is such. There's really, it begs the issue, why would the Washington legislature impose, seek unlimited territorial restriction? Well, it doesn't. This is Washington law. And if you're going to go apply Washington law, this is what the Washington law is. And, again, it's that seems very simple to me. You construe the statute, and there are two provisions where it applies only in the state, and there are lots of other provisions without that limitation. But, again, Your Honor. But that's assuming that Washington law applies. Correct, Your Honor. In the first instance, does Washington law apply by virtue of the Washington choice of law rules? Two, does the FIPA itself apply? And, third, FIPA itself creates no remedies. An action is susceptible to a claim for a violation of 180, if and only if it constitutes a violation of the Washington Consumer Protection Act, which is RCW 1901, excuse me, 1986-020, as an unfair deceptive act of practice. And the Consumer Protection Act itself has certain territorial restrictions. An element of a claim under the Consumer Protection Act is that the conduct giving rise to the action occurred in, quote, trade or commerce, which is defined as trade or commerce affecting the people or citizens of the state of Washington. And there is not a case that I know of in the state of Washington which has ever decided that the Consumer Protection Act applies, gives protection to a non-resident of the state of Washington who was injured outside the state of Washington. The only time that that has happened was in the Court of Appeals decision in the Schnell case, which was reversed by the Washington Supreme Court in its initial decision saying point blank that a non-resident of the state of Washington simply has no standing to file a claim under the Consumer Protection Act. And then just last month in an amended opinion didn't deal with that issue. But there is no case in the state of Washington that has ever held under the Consumer Protection Act that a person injured outside the state of Washington, who at least was not injured while in the state of Washington, has a claim under the Consumer Protection Act. Because, again, the Consumer Protection Act was designed. The district court simply decided that the Washington statute on franchises, that the Bill of Rights didn't apply. Correct. All right. So to follow up on Judge Fletcher's question, if we were to say that the Washington statute is not territorially limited to in the state, then wouldn't we have to remand for all of the other issues you're raising? Well, again, Your Honor, you would have to reach the question, is there a claim under the Consumer Protection Act? Because FIPE itself does not create a claim. Well, why do we have to reach that without letting the district judge consider it? Well, Your Honor, you could, because — What I'm saying is that's the only question the district court considered. If we were to determine that it was wrong in its answer, then there are a number of legal questions about Washington law and other — that we should allow the district court to answer first. Your Honor, could do that. But I would submit, in the first instance, the original motion was argued both on the merits and as to the application of Washington law. The court did not address the merits, but the merits were raised. No, no, I'm not suggesting it wasn't raised. I'm saying it wasn't decided. Let me ask you another question related to this, not the merits of the lawsuit under FIPE, but rather, again, whether or not it should apply to this case at all. Earlier you said that under Washington choice of law rules, we shouldn't do this. And I took that to be an argument, in a sense, independent of FIPE itself. This is basically a conflicts question. That's correct. I just looked at your brief again, and I don't find any argument based on Washington choice of law rules. Well, it was not prominently discussed. I couldn't find it at all. Well, it is in a footnote, Your Honor. Could you point me to the footnote then? It is, Your Honor. Could you point me to the footnote? I don't have it in front of me. It's in a discussion. I don't have my brief with me. It's in a discussion in the section pertaining to an analysis. If it's there, I'll find it. Does Washington follow the secondary statement? It does, Your Honor. Section, I think it's 145. So it's basically a significant context. With the most significant context to the issue. This is not a comment on Washington law. It's a comment on the secondary statement. It has been described, I think, accurately as a playground for unbalanced minds. Your Honor, I'm aware of that. That playground might also apply to your section 16 of your contract, the franchise agreement,  And then the last sentence seemed to say that this section is totally meaningless. I think what it says, Your Honor, is that the choice of law rule does not apply to claims, among other things, it says, does not apply to claims under the Washington Franchise Act unless that statute would otherwise. Or any other doctrine of law. Well, I don't think it says anything else. Well, it says nothing in this section intended to invoke the application of any franchise, business opportunity, antitrust, implied covenant, unfair competition, fiduciary, or any other doctrine of law of the state of Washington. Unless they would apply on their face. Yeah. But it doesn't otherwise. So what's left of the first 90%? Well, a breach of contract. No, no, any other doctrine of law. Well, Washington law would apply with respect to the interpretation of the contract, would apply as to whether there were breaches of the contract. If it's a doctrine of law, the interpretation of the contract, Washington law says, well, I interpret contracts by flipping a coin. That would apply because it's a doctrine of law. Well, Your Honor, I just, I don't read that provision that broadly. I think it's, what it's trying to exclude, and perhaps could be done more artfully, was the application of certain Washington State statutory principles principally, which would not otherwise apply on their face. In other words, it was trying to avoid the very question that was raised in Taylor, which is we don't want the Washington Franchise Act to apply to this particular situation where it wouldn't otherwise apply. Well, then I don't understand what the first 90% of the paragraph's about. It seems to say how wonderful Washington law is on franchises. And then it says no Washington law. Therefore, we're going to apply Washington law. Well. And then the last paragraph says no we're not. I think, Your Honor, again, I would read the provision as saying that Washington law applies with respect to the interpretation and enforcement of the contract, that contract principles or even common law tort principles apply. Because the franchise order is based on. Again, it says whether standing in contract, tort, or otherwise. Correct. We didn't just say we love contracts and torts. We said we love franchises in Washington. Well, but then it goes on in the second sentence to exclude specifically. We don't. I mean, certainly, I mean, you would agree with me, would you not, Your Honor, that in the second sentence, it may do more than that, but the second sentence attempts to exclude application of the Washington franchise law unless it would otherwise apply. No, I wouldn't. Okay. All right. Well, we've settled that problem. Okay. Other than the meaning of the franchise statute in Washington. That's correct, Your Honor, which the district court decided based upon Taylor, which was that in this state limitations of Taylor or of the Washington Franchise Investment Protection Act apply to all actions under the statute, which is what Judge Kuhnhauer had held in Taylor and which this court then affirmed in Taylor last year. Thank you very much, Your Honor. Thank you. I would add just a couple of points. In this discussion about the franchise agreements. You have 46 seconds for those couple of points. In addition to the controlling law paragraph of the franchise agreement, I would ask the court to look at the choice of law provision and the personal guarantee, which does not have that confusing language. It just says let's apply Washington law. In respect to the structure of FICA that Mr. Barrett spoke about, I think all the Washington cases make clear that we have a structure where it sets the bill of rights separate from the registration and disclosure provisions. That's in a number of Washington cases that cite that principle. And lastly, I would just urge that I was not trying to play semantics with the words of Grabquick. I think Grabquick rejects the notion that we look to legislative intent, that we look to anything but the literal application of language to find a geographic limitation. Thank you, counsel. The case just argued will be submitted. The court will take a brief morning recess. Thank you.
judges: Reinhardt, Fletcher W. , Rawlinson